IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES FORD, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PSYCHOPATHIC RECORDS, INC., INSANE CLOWN POSSE LLC, JUGGALO GATHERING LLC, FAYGO BEVERAGES, INC., HOGROCK, INC., & TIMOTHY F. YORK, individually & d/b/a Hogrock Campground, | ) Case No. 12–cv–0603–MJR–PMF ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**REAGAN, District Judge:**

### INTRODUCTION & PROCEDURAL HISTORY

Plaintiff sued Insane Clown Posse ("ICP"), a hardcore hip hop music act from Detroit, for injuries stemming from a 2010 ICP concert at the Eleventh Annual "Gathering of the Juggalos"[1] ("the Gathering"), a festival held at Cave-in-Rock, Illinois. According to the Second Amended Complaint, during part of ICP's show known as "Faygo Armageddon," the band (comprising Joseph Bruce and Joseph Utsler, who perform under the respective personas of 'wicked clowns' Violent J and Shaggy 2 Dope) allowed individuals onstage to spray and throw bottles of Faygo soft drink into the crowd. Plaintiff—an ICP fan and one of the Faygo throwers—was injured when he slipped and fell onto an overturned trampoline with sharp, sheet metal edges. Also named as

---

[1] According to the complaint in another federal case, "Juggalo" is a term used to describe the fan base of ICP and its label, Psychopathic Records. *Hertz Schram PC v. Fed. Bur. of Investigation*, No. 12–14234–MAG–RSW (E.D. Mich. Sept. 25, 2012). That lawsuit is a FOIA action in which ICP seeks information relating to the FBI's classification of Juggalos as a "Non-Traditional Gang." See **2011 NATIONAL GANG THREAT ASSESSMENT — EMERGING TRENDS, FEDERAL BUREAU OF INVESTIGATION,** http://www.fbi.gov/stats-services/publications/2011-national-gang-threat-assessment (last visited September 11, 2013).

1

defendants were Psychopathic Records (ICP's record label and a Gathering promoter), Juggalo Gathering LLC, Timothy York (d/b/a HogRock Campground—where the Gathering was held), HogRock, Inc. ("HogRock"), and Faygo Beverages.

The case comes before the Court on two motions for summary judgment: one filed by Defendants ICP, Hogrock, Juggalo Gathering, Psychopathic Records and Timothy York (collectively, the "Juggalo Gathering" Defendants) (Doc. 117), the second filed by Faygo Beverages (Doc. 118). After a prolonged discovery period, the motions ripened with Plaintiff's September 9, 2013 responses. Having carefully reviewed the motions and the entirety of the record, the undersigned rules as follows.

## FACTUAL BACKGROUND

Because the case comes before the Court at the summary judgment stage, the Court construes all facts and reasonable inferences in favor of the non-movant—here, Plaintiff. *Thayer v. Chiczewski*, 705 F.3d 237, 243 (7th Cir. 2012); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Fans of ICP—collectively known as Juggalos—coalesce for the Juggalo Gathering every year. From 2007 onward, the annual festival has been held at Hogrock Campground, a private property owned by Defendant Timothy York in Cave-in-Rock, Illinois. (Doc. 149-4, 4). Attendees can partake in various activities (comedy and wrestling among them), but—according to the deposition of Violent J, one of the ICP performers—from the founding Gathering through at least 2010, the culmination of the Gathering was marked by an ICP performance. (Doc. 149-5, 7). During ICP concerts, the lead singers and up to six other performers sometimes stand on small trampolines. (Doc. 149-5, 12). Sometimes they use the trampolines to bounce open two-liter bottles of Faygo—a Detroit soft drink mentioned in some ICP songs—into the crowd.[2] And the

---

[2] Faygo is referenced in many ICP songs, and is "a big part" of Juggalo / ICP culture. Nonetheless, there are no formal connections between Faygo and ICP. Psychopathic Records did purchase over $8,000 worth of Faygo for the 2010

grand finale of an ICP concert is known as "Faygo Armageddon." (Doc. 149-5, 4). During "Faygo Armageddon," ICP and others throw and spray copious amounts of Faygo into the crowd—according to Plaintiff, the 2010 Faygo Armageddon included four large bins and hundreds of cartons of two-liter Faygo bottles. (Doc. 149-2, 24).

Violent J describes the evolution of the Faygo Armageddon as moving from "the real thing" to "[s]taged chaos." (Doc. 149-5, 11). In the 1990s, fans would frequently storm the ICP stage, and at non-Gathering concerts were allowed to come onstage during Faygo Armageddon. (Doc. 149-5, 9). Shows sometimes ended because fans stormed the stage (though not during Faygo Armageddon). (*Id.* at 11). Then ICP started inviting fans from the crowd to wait on the side of the stage, and those fans would come onstage during the finale. (*Id.*). More recently, the group has decided to allow only other entertainers and special guests onstage during the Faygo Armageddon. (*Id.*). But those entertainers have no special pass, and according to Violent J, those performers "look just like the fans." (*Id.* at 16). (Though fans are not permitted onstage during Gathering concerts, at other shows ICP sells VIP tickets for those who wish to join ICP during the finale and douse the crowd with Faygo).

Plaintiff attended the Eleventh Annual Gathering—his fourth—in 2010. (Doc. 149-2, 4). He saw ICP perform in each Gathering, but in 2002, 2003, and 2008 he had nosebleed seats. During those shows, as well as the 2010 show, Plaintiff noticed the pair of trampolines being used by ICP. (Doc. 149-2, 15). And during the earlier shows, though he had not personally been onstage, he had seen other people from the rowdy crowd go onstage to assist with the Faygo Armageddon. (Doc. 149-2, 63–64). From his knowledge of ICP concerts, Plaintiff asserts that fans are "everywhere up" on the stage. (Doc. 149-2, 65).

---

Gathering, (Doc. 149-3, 49), but Faygo does not endorse ICP or its affiliates in any way. Indeed, in the past Faygo rejected an ICP proposition to manufacture an ICP-themed cola because, according to Violent J, "their product is a family product and we weren't a family thing." (Doc. 149-5, 7). "Faygo Armageddon" is not an official term, rather one coined by band members and Juggalos to describe the typical ICP finale. (Doc. 149-5, 4).

3

Perhaps because he arrived three hours early, Plaintiff managed to maneuver his way to a better vantage point (there are no actual seats) during the 2010 ICP show. (Doc. 149-2, 16–17). Because of overcrowding Plaintiff made his way to the right of the stage. (*Id.* at 18–19). Some security guards were wandering around, and some were stationed by a barrier set up between the crowd and the stage. (Doc. 149-2, 19). Though Plaintiff did not get permission from ICP or any security or staff, he followed a group of about thirty people through an open fence onstage during the last song. (Doc. 149-2, 22, 64). Plaintiff had noticed the standard pair of trampolines onstage during the set, but as he walked onstage he only saw one. (Doc. 149-2, 23). There was no attempt by security to keep the fans offstage. (*Id.* at 34–35). Indeed, at one point, Plaintiff took an available two-liter Faygo and handed it to Violent J, who neither asked him to leave stage nor called security. (*Id.* at 25).

Plaintiff got another Faygo, but as he was walking backward to dispose of it, he tripped. His left heel struck and unseen object, and as he tried to regain his balance his right foot slipped on the Faygo-covered stage. (Doc. 149-2, 28). He dropped the Faygo and fell on his right side, finding himself in an overturned trampoline. (*Id.* at 30). According to Plaintiff, a skirt of sheet metal had been wrapped from leg-to-leg around the outside circumference of the trampoline. (*Id.*).[3] When Plaintiff stood up, he saw his shin bone hanging from his lower leg; the cut went almost all the way around his leg. (*Id.* at 31). Plaintiff had two surgeries, and now walks with a limp—he is forced to wear a spring loaded brace so he does not drag his foot as he walks. (*Id.* at 43).

## ANALYSIS

1. **Summary Judgment Standard**

The parties do not dispute that the federal summary judgment standard applies in this diversity case (or that Illinois law will control the substantive issues). *See Nationwide Ins. Co. v.*

---

[3] Both Violent J and the Psychopathic Records CEO dispute that sheet metal could have been on the trampoline. According to both of them, only fabric was used around ICP's trampolines' edges.

*Cent. Laborers' Pension Fund*, 704 F.3d 522, 525 (7th Cir. 2013); *Reid by Reid v. Norfolk & W. Ry.*, 157 F.3d 1106, 1110 n.2 (7th Cir. 1998). Summary judgment—which is governed by Federal Rule of Procedure 56—is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant—here, Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### 2. Juggalo Gathering Defendants' Motion for Summary Judgment — Denied

The Juggalo Gathering Defendants argue for summary judgment on four alternative grounds: (1) Defendants owed Plaintiff no duty because he was a trespasser; (2) Plaintiff's evidence is insufficient to support a finding Defendants breached a duty of ordinary care; (3) Plaintiff's evidence is insufficient to support a finding Defendants' actions proximately caused him damages; and (4) the evidence shows Defendants are entitled to summary judgment on their affirmative defenses of assumption of risk, contributory negligence, and comparative negligence. Taking those assertions in turn, the undersigned finds summary judgment unwarranted because disputed material facts remain as to each argument.

Preliminarily, the Court notes Plaintiff does not dispute Defendants' characterization that this action is one for premises liability. Liability attaches where a defendant owes a duty of care, the defendant breaches that duty, and the plaintiff incurs injuries proximately caused by that breach. *Choate v. Indiana Harbor Belt R.R. Co.*, **980 N.E.2d 58, 64 (Ill. 2012)**; *Espinoza v. Elgin, Joliet & E. Ry. Co.*, **649 N.E.2d 1323, 1326 (Ill. 1995).** And generally, a premises owner or occupier owes a licensee or invitee a duty of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." *Rhodes v. Ill. Cent. Gulf R.R.*, **665 N.E.2d 1260, 1268 (Ill. 1996) (citing 740 ILCS 130/2, and noting the elimination of the common law distinction between the duties owed a licensee and invitee);** *Grant v. S. Roxana Dad's Club*, **886 N.E.2d 543, 548 (Ill. Ct. App. 2008).** But if, as Defendants claim, Defendant was a trespasser, they owed him no duty. *Choate*, **980 N.E.2d at 64.**

#### A. *Plaintiff's Trespasser Status—Disputed Material Facts Remain*

The Juggalo Gathering Defendants first assert that they owe Plaintiff no duty because, during his time onstage during the Faygo Armageddon, he was a trespasser. *See Choate*, **980 N.E.2d at 64;** *Rhodes*, **665 N.E.2d at 1268**. Illinois law defines trespasser as one who enters upon

6

another's land for his own purposes without permission, invitation, or right. *Lange v. Fisher Real Estate Dev. Corp.*, 832 N.E.2d 274, 277 (Ill. Ct. App. 2005) (citing *Helms v. Chi. Park Dist.*, 630 N.E.2d 1016, 1020 (Ill. Ct. App. 1994)). A licensee, on the other hand, is one who enters upon another's premises with the owner's or occupier's express or implied consent to satisfy his own purpose. *Rhodes*, 665 N.E.2d at 1268. And an invitee is one who enters another's premises with the owner/occupier's express or implied consent for the mutual benefit of himself and the owner, or for a purpose connected with the business in which the owner is engaged. *Id.*

While the existence of a duty is generally a legal question, *Rhodes*, 665 N.E.2d at 1267, a plaintiff's status as trespasser is a question for the jury if there are factual questions present, *Rodriguez v. Norfolk & W. Ry. Co.*, 593 N.E.2d 597, 607 (Ill. Ct. App. 1992); *Basham v. Hunt*, 773 N.E.2d 1213, 1224 (Ill. Ct. App. 2002); *Eshoo v. Chi. Transit Auth.*, 723 N.E.2d 339, 343 (Ill. Ct. App. 1999). Defendants urge the Court to hold that, because Plaintiff deviated from the bounds of his invitation by taking the stage, he was a trespasser to whom they owed no duty. Plaintiff counters that the evidence supports an inference that he had Defendants' implied consent to take the stage.

Defendants' starting point is a sound one. Citing *Cockrell v. Koppers Indus., Inc.*, they correctly point out the venerable adage that an invitee who deviates "from the accustomed way or goes to a place other than that place covered by the invitation, the owner's duty of care to him as an invitee ceases"—in other words, an invitee or licensee becomes (for liability purposes) a trespasser when he exceeds the scope of his invitation. 667 N.E.2d 676, 680 (Ill. Ct. App. 1996); *Briney v. Ill. Cent. R.R. Co.*, 81 N.E.2d 866, 869 (Ill. 1948).

But Plaintiff's counterargument—and the evidence he submits to support it—suggests two ways in which a finder of fact could infer Defendants owed him a duty. Illinois courts have relied on Section 330 of the Restatement (Second) of Torts and its comments to analyze trespasser status.

7

*Skoczylas v. Ballis*, **547 N.E.2d 565, 567 (Ill. Ct. App. 1989).** One who has a landowner's consent to be on the land is not a trespasser, as the Second Restatement illuminates with the definition of and implied consent. "Consent" indicates that the possessor of the land is "in fact willing that the other shall enter or remain on the land . . . if he desires to do so," **Restatement (Second) of Torts § 330, cmt *c* (1965),** and implied consent may be expressed by acts other than words, *id.* **at cmt. *e*.** "The decisive factor is the interpretation which a reasonable man would put upon the possessor's acts." *Id.*

Further, exceptions to the "no duty to trespassers" rule have evolved over time, *Lee v. Chi. Transit Auth.*, **605 N.E.2d 493, 499 (Ill. 1992)**, to include cases where a landowner knows or should know of the constant intrusion of frequent trespassers, *id.* **(citing *Bernier v. Ill. Cent. R.R. Co.*, 129 N.E. 747 (Ill. 1921))**. Illinois courts label the doctrine (closely tied with the idea of implied consent) both the "frequent trespass" exception, *Vega v. Ne. Ill. Reg. Commuter R.R. Corp.*, **863 N.E.2d 733, 738 (Ill. Ct. App. 2007)**, and the "permissive use" exception, *McKinnon v. Ne. Ill. Reg. Commuter R.R. Corp.*, **635 N.E.2d 744, 747–48 (Ill. Ct. App. 1994)**.

In *McKinnon*, for example, the exception applied when defendants permitted and allowed local residents to use a private crossing with such frequency "that it became the custom and habit of persons to do so." *McKinnon*, **635 N.E.2d at 748.** Of course, a defendant need not anticipate every action of frequent trespassers. In *Miller v. General Motors*, the court declined to apply the exception where a large pumphouse's owner—even though it knew trespassers sometimes entered its land—had no reason to anticipate a trespasser would use eyebolts to scale a nine-foot wall, crawl through a small opening in a ceiling, and grab an electrical wire. *Miller v. Gen. Motors Corp.*, **565 N.E.2d 687, 692–93 (Ill. Ct. App. 1990).**

In the instant case, there is evidence that, at a minimum, Defendants had reason to anticipate the presence of concertgoers onstage, and further that an objective observer would have taken

8

Defendants' actions for implied consent. Violent J knew, despite recent efforts to keep them from rushing the stage, there was a history of Juggalos onstage during previous Faygo Armageddons: in the 1990s, it "[u]sed to happen all the time." (Doc. 149-5, 11). To prevent uncontrolled chaos, ICP "started inviting fans from the crowd to wait on the side of the stage and they would come up that way on the end." (*Id.*). Now, according to Violent J, the chaos is of the staged variety—only performers and special guests are allowed onstage during the Faygo Armageddon, (*id.*)—but none of those guests have a special pass, and the performers "look just like the fans," (*id.* at 16). Plaintiff had been to three previous Gatherings, and had seen crowd members come on to the stage to help with the Faygo Armageddon. (Doc. 149-2, 63–64). And when Plaintiff was discovered onstage—he gave a two-liter Faygo to Violent J during the grand finale—nobody asked him to leave or attempted to remove him. A reasonable observer could conclude that ICP gave a group of fans implied consent, and a finder of fact could infer ICP knew (or should have known) about frequent trespassers on their stage—and therefore owed Plaintiff a duty.[4] *See Joy v. Chi., Burlington & Quincy R.R. Co.*, 105 N.E. 330 (Ill. 1914) (law imposed duty on railroad to keep a lookout for trespassers where it knew or was chargeable with the knowledge "a considerable number of people" in a populous area crossed its tracks frequently over "a considerable period of time."); *Bernier v. Ill. Cent. R.R. Co.*, 129 N.E. 747 (Ill. 1921) (affirming jury finding that a railroad owed a duty to a pedestrian who crossed railroad's right of way that pedestrians had used for more than ten years).

Based on the record, a reasonable jury could find the frequent trespass exception to the "no duty to trespassers" rule applies, and/or that Plaintiff's actions at the concert were within the scope of an implied invitation. In the end, Defendants' position is undercut by the rule from *Rhodes*, cited

---

[4] Defendants, though they do not squarely present the legal issue, also hint Plaintiff's injuries were the result of an "open and obvious" condition, which would negate any duty owed to Plaintiff. But Plaintiff's testimony that he could not see the trampoline on which he fell put into doubt the "obvious" nature of the danger, and where "there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual." *Alqadhi v. Standard Parking*, 938 N.E.2d 584, 588 (Ill. Ct. App. 2010).

by Plaintiffs and controlling here, that even when a defendant presents a strong argument the plaintiff was a trespasser, the issue is properly left to a jury when disputed facts (and contrary inferences from undisputed facts) lead to contrary conclusions. *Rhodes v. Ill. Cent. Gulf R.R.*, **665 N.E.2d 1260, 1274 (Ill. Ct. App. 1996).** That suffices for Plaintiff to stave off summary judgment on Defendants' theory that Plaintiff was a trespasser.

### B. Breach, Proximate Cause and Affirmative Defenses—Disputed Material Facts Remain

In Illinois, whether a defendant's act or omission represents a breach of duty—and whether such action or omission proximately caused the plaintiff's injury—are generally issues of fact to be decided by a jury. *Thompson v. Gordon*, **948 N.E.2d 39, 45 (Ill. 2011);** *Swearingen v. Momentive Specialty Chems., Inc.*, **662 F.3d 969, 972 (7th Cir. 2011) (applying Illinois law).** Only when there is no material issue regarding the matter, or only one conclusion is clearly evident, are breach and proximate cause questions of law. *Furry v. United States*, **712 F.3d 988, 992 (7th Cir. 2013).**

Likewise, affirmative defenses to negligence are usually left to a jury. Under the Illinois comparative fault regime, "an injured party is barred from recovering only if the *trier of fact* finds that his conduct was more than 50% of the proximate cause of the injury for which recovery is sought. *Malen v. MTD Prods., Inc.*, **628 F.3d 296, 313 (7th Cir. 2010) (citing 735 ILCS 5/2–1116) (emphasis added).** Comparative fault has subsumed the former defenses of contributory negligence and secondary implied assumption of risk,[5] so that those former defenses are merely damage-reducing factors. *Id.*; *Evans v. Lima Lima Flight Team, Inc.* **869 N.E.2d 195, 206 (Ill. Ct. App. 2007).** *Lutz v. Chi. Transit Auth.*, **183 N.E.2d 579, 582–83 (Ill. Ct. App. 1962)**

---

[5] Comparative fault did not abolish express assumption of the risk, where an individual explicitly agrees to relieve another of a legal duty, *Evans*, **869 N.E.2d at 206**, but there is no evidence to suggest Plaintiff entered any explicit agreement with Defendants. Nor is primary implied assumption of the risk—where the parties' conduct indicates an individual has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty—on the table. *Id.* And regardless, the latter doctrine—like breach, proximate cause, and comparative fault—is a question of fact, and not appropriate for summary judgment. *Id.*

10

**(question of fact remained as to whether overcrowding was the proximate cause of injuries woman suffered on a bus).** And whether conduct was contributorily negligent "is rarely decided as a matter of law. The determination of what conduct is … contributorily negligent is a composite of the experiences of average people, and is left to a jury for evaluation." *Merca v. Rhodes*, **960 N.E.2d 85, 97 (Ill. Ct. App. 2011) (citing** *Johnson v. Colley*, **490 N.E.2d 685, 688 (Ill. 1986)).**

Here, the undersigned can quickly dispose of Defendants' arguments for summary judgment on these fact-intensive issues. Plaintiff approached the ICP stage through what he describes as an open gate, walked up the stage stairs and close enough to an ICP performer to hand him a Faygo bottle, all without being told he should leave the stage. While Violent J deponed that the carpeted stage makes it virtually impossible to slip, and two Defendants testified the onstage trampolines are skirted with fabric, Plaintiff tells a different story: that he tripped on an upside-down trampoline, that he slipped when trying to gain his balance, and that when he fell his leg was cut to the bone by sheet metal skirting the trampoline. If the jury finds Defendants had a duty to Plaintiff, they could also find the presence of the upside-down trampoline and slippery conditions represented a breach of that duty and that breach caused Plaintiff harm. *See Cunis v. Brennan*, **308 N.E.2d 617, 622 (Ill. 1974) ("Under legal principles clearly stated and long established, the question whether" a defendant failed to exercise ordinary care in permitting a sharp pipe to remain in the open was a question of fact, as were questions of proximate cause).** Both Plaintiff and Defendants acknowledge the chaos present during the 2010 Faygo Armageddon, but whether Plaintiff's foray onstage made him more than 50% responsible for his injuries lies far beyond the pale of a summary judgment ruling. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008) (Court's role on summary judgment is not to evaluate the weight of the evidence);** *Merca*, **960 N.E.2d at 97.**

11

It may be that Plaintiff's venture onto the ICP stage made him a trespasser under Illinois law, that the Juggalo Gathering Defendants breached no duty toward Plaintiff, that even if such a breach occurred it did not proximately cause Plaintiff's injuries, or that Plaintiff's conduct was more than 50% of the proximate cause of his injuries. But those are questions for a jury, which could reasonably decide otherwise. The undersigned accordingly finds that genuine issues of material fact remain for trial, and that the Juggalo Gathering Defendants are not entitled to judgment as a matter of law. Their Motion for Summary Judgment (**Doc. 107**) is **DENIED**.

### 3. Faygo's Motion for Summary Judgment — Granted

As discussed above, a negligence claim in Illinois has three elements: a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Bajwa v. Metro. Life Ins. Co.*, **804 N.E.2d 519, 526 (Ill. 2004)**. Faygo, the producer of the soda ICP and its Juggalos threw into the crowd and sprayed onto the stage during the Faygo Armageddon, attacks all three elements.

#### A. *No Duty*

While Faygo did sell over $8,000 worth of product to Psychopathic Records for the 2010 Gathering, it asserts it has never knowingly provided and/or supplied its products for the Faygo Armageddon, that it had nothing to do with the placement or modification of trampolines on the ICP stage, and that it had no contract or other involvement with the Gathering, ICP generally, or relationship with Plaintiff.

Plaintiff invokes two cases in counterargument. In *Frye v. Medicare-Glaser Corp.*, the Illinois Supreme Court reasoned that the "duty to exercise ordinary care is a broad duty." **605 N.E.2d 557, 562 (Ill. 1992).** "It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence

of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Id.* **at 561 (internal citation omitted).**

Plaintiff marries that reasoning with the facts of *Cozza v. Culinary Foods, Inc.*, in which a contractor was held to have a duty to a telecommunications worker on its construction site. **723 N.E.2d 1199, 1202 (Ill. Ct. App. 2000).** The contractor had stored a partially folded scaffold in an out of the way corner that happened to be (apparently) useful to the telecommunications worker, who fell from it. The Court of Appeals reasoned it was foreseeable that a worker would use the scaffold, that the contractor had the opportunity and duty to foresee the presence of another worker and danger to him, and the contractor's burden in guarding against the injury was minimal. *Id.* **at 1206.** In essence, Plaintiff argues that because duty does not depend on the relationship between a plaintiff and a defendant, and because ICP's stage was wet with Faygo, Faygo must have had a duty to Plaintiff.

But that argument for Faygo's duty is overly simplistic: this is a case where liability is premised on Faygo's sale of a widely-available soft drink that in itself is not dangerous—not a case where one worker negligently left a hazard for another. The existence of a duty is a question of law, and the inquiry involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant. *Krywin v. Chi. Transit Auth.*, **938 N.E.2d 440, 447 (Ill. 2010) (citing** *Marshall v. Burger King Corp.*, **856 N.E.2d 1048, 1057 (Ill. 2006)).** Moreover, the existence of a duty turns in large part on public policy considerations. *Marshall*, **856 N.E.2d at 441.** And while the broad duty of ordinary care can extend to remote and unknown persons, there is not a "duty to the world at large." *Simpkins v. CSX Transp., Inc.*, **965 N.E.2d 1092, 1097 (Ill. 2012).**

13

The case against Faygo more closely resembles *City of Chicago v. Beretta U.S.A. Corp.*, in which the Supreme Court of Illinois declined to extend a duty to gun manufacturers and distributors to prevent their products from "ending up in the hands of persons who use and possess them illegally." **821 N.E.2d 1099, 1126 (Ill. 2004).**[6] In *Beretta*, even though it was reasonably foreseeable criminals would obtain guns and use them, the magnitude of the burden plaintiffs sought to impose on the defendants—altering their business practices to weed out those who would use their product to create a risk of harm to others—was "immense," especially in light of the sheerly speculative nature of any positive consequences and the vast expansion of liability that could result. *Id. See also Lorang v. Heinz*, **248 F.3d 785, 785 (Ill. Ct. App. 1969) ("Obviously every risk which is Foreseeable does not create a Duty to an injured person.").**

Here, the Court likewise declines to find Faygo has a duty to individual members of the public to control the distribution of its soft drink. While it is foreseeable that someone, somewhere in the country will slip on negligently (or intentionally) spilled soft drink, the burden on Faygo (and other beverage manufacturers) to prevent such harms would be immense and completely unworkable. *See Beretta*, **821 N.E.2d. at 1116 ("[W]e are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that create a risk of harm to another.").** *Linton v. Smith & Wesson*, **469 N.E.2d 339, 340 (Ill. 1984) ("No Illinois decision has imposed a duty upon the manufacturer of a nondefective [product] to control the distribution of that product to the general public…").**

---

[6] Though the duty calculus in *Beretta* is part of a public nuisance analysis, the Supreme Court of Illinois was clear that it was congruent with the reasoning in *Riordan v. Int'l Armament Corp.*, 477 N.E.2d 1293 (Ill. 1985), and *Linton v. Smith & Wesson*, 469 N.E.2d 339 (Ill. 1984), "in which the theories of liability included, *inter alia*, negligence." **Beretta, 821 N.E.2d 1126.**

14

### B. No Proximate Cause

Plaintiff suggests Faygo is more analogous to a retailer who is willing to serve customers who may intend to act negligently. There is evidence Faygo knew its products were being sprayed and tossed at ICP concerts, and the Supreme Court of Illinois ducked a duty analysis for analogous defendants in *Beretta*. **821 N.E.2d at 1127–36 (leaving the duty question answered but finding no proximate cause between retailer sales and eventual harm).** Even so, liability cannot attach because there is no proximate cause between Faygo's actions and Plaintiff's injuries.[7]

One element of proximate cause is "legal cause," which is established only if the defendant's conduct is so closely tied to the plaintiff's injury that the defendant should be held legally responsible for it. *Beretta*, **821 N.E.2d at 1127;** *Malen v. MTD Prods., Inc.*, **628 F.3d 296, 309–10 (7th Cir. 2010) (applying Illinois law).** And in negligence claims against a dealer, lawful commercial activity, followed "by harm to person and property caused directly and principally by the … activity of intervening third parties, may not be considered a proximate cause of such harm." *Beretta*, **821 N.E.2d at 1136.** If a defendant's conduct merely furnishes a condition that makes an injury possible, and an independent third party subsequently causes the injury, the defendant's creation of the condition is not a proximate cause. *Young v. Bryco Arms*, **821 N.E.2d 1078, 1087 (Ill. 2004).**

Faygo sold its product to the Gathering, thereby contributing to one condition necessary for Plaintiff's injury. But the unforeseeable presence of a sharp-edged trampoline on a Faygo-covered stage swarming with Juggalos was the result of other parties' actions, so Faygo's sale of its soda cannot be a proximate cause of the harm in this case. *See Blood v. VH-1 Music First*, **668 F.3d 543, 549 (7th Cir. 2012) ("In Illinois, we duly recognize that drawing the line for proximate cause is usually a task for the factfinder. But, this case presents a set of facts nowhere near**

---

[7] Lack of proximate cause, while generally a fact question, may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. *Beretta*, **821 N.E. at 1127–28.**

15

that line.  To allow this case to continue beyond summary judgment opens the door to endless liability, . . . plainly a result that proximate cause analyses are designed to avoid.").

In short, Faygo had no duty to prevent ICP from buying its products for use (or misuse) at its concert, and assuming *arguendo* it did, the undersigned holds as a matter of law there is no proximate cause between Faygo's sale of its product and Plaintiff's injuries.  *See Wiebel v. Mid-Continent Bottlers, Inc.*, 388 N.E.2d 475, 479 (Ill. Ct. App. 1979) ("To hold otherwise would be tantamount to making the defendants the insurers of the safety of every foreseeable plaintiff, which we refuse to do.").  Faygo's Motion for Summary Judgment (**Doc. 108**) is accordingly **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Psychopathic Records, Insane Clown Posse, Juggalo Gathering, Timothy York (individually and d/b/a Hogrock Campground) and Hogrock Inc. (**Doc. 117**) is **DENIED**.  The Motion for Summary Judgment filed by Faygo Beverages (**Doc. 118**) is **GRANTED**, and the Clerk is **DIRECTED** to terminate Faygo as a Defendant.

Jury trial remains set for October 21, 2013.  The parties are **DIRECTED** to contact the chambers of Magistrate Judge Frazier so as to set a pre-trial Settlement Conference.

**IT IS SO ORDERED.**

**DATE: September 17, 2013**                     s/ *Michael J. Reagan*
                                                  **MICHAEL J. REAGAN**
                                                  United States District Judge